# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| YVETTE GRIFFIN, individually and on behalf of all others similarly situated, 2047 Montrose Dr. East Point, Georgia 30349<br><br>　　　　　Plaintiff,<br><br>v.<br><br>THE BALTIMORE LIFE INSURANCE COMPANY, a Maryland corporation, 10075 Red Run Road Owings Mills, Maryland 21117<br><br>　　　　　Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Yvette Griffin ("Griffin" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant, The Baltimore Life Insurance Company ("Baltimore Life" or "Defendant"), to stop its practice of engaging agents to place unsolicited autodialed and prerecorded telemarketing calls to the cellular telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.　　Plaintiff Yvette Griffin is a natural person and resident of East Point, Fulton County, Georgia.

2.　　Defendant The Baltimore Life Insurance Company is a corporation incorporated and existing under the laws of the State of Maryland with its headquarters located at 10075 Red

1

Run Road, Owings Mills, Maryland 21117.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which is a federal statute. The Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* because the classes consist of over 100 people, there is minimal diversity, and the amounts in controversy are over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply. This Court has supplemental subject-matter jurisdiction over the ancillary and pendent state law claim under 28 U.S.C. § 1367.

4. The Court has personal jurisdiction over Defendant because it is headquartered in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a Defendant resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## COMMON FACTUAL ALLEGATIONS

6. Defendant Baltimore Life is an insurance company that sells consumers various types of insurance products, namely life insurance.

7. To solicit consumers to purchase its insurance products, Baltimore Life engages agents and marketing organizations to conduct a wide-scale telemarketing scheme that features the placement of autodialed and prerecorded calls to consumers nationwide.

8. All of the calls at issue in this case were made on behalf of, for the benefit of, and with the knowledge and approval of Baltimore Life.

9. Unfortunately for consumers, Baltimore Life casts its marketing net too wide.

2

That is, Defendant's agents placed the prerecorded calls at issue in this case to consumers, such as Plaintiff, that did not consent to receive them—in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("Act" or "TCPA").

10. Further, its agents also placed (and continue to place) autodialed telephone phone calls to consumers that never provided prior express consent to be called and to consumers with whom it has no prior relationship.

11. The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case.

12. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks: (a) injunctive and declaratory relief requiring Defendant and its agents to cease all unsolicited telemarketing activities to consumers as complained of herein, (b) an award of statutory damages to the members of the Classes under the TCPA, (c) pre- and post-judgment interest, (d) costs and (e) reasonable attorneys' fees.

13. By making the telephone calls at issue in this Complaint, Defendant's agents caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes aggravation, nuisance, and invasions of privacy that result from the placement and receipt of such unwanted calls, a loss of value realized for any monies consumers paid to wireless carriers for the receipt of such calls, and an interference with and interruption and loss of the use and enjoyment of their telephones, including the related data, software, and hardware components, and wear and tear on such components including the consumption of battery life, among other harms.

14. Defendant's agents knowingly made (and continue to make) pre-recorded telemarketing calls without the prior express consent of the call recipients.

15. As such, Defendant's agents not only invaded the personal privacy of Plaintiff and members of the putative Classes, they also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF

16. Plaintiff Griffin is the primary and customary user of the cellular telephone number ending in 8026.

17. On or around July 17, 2019, Plaintiff Griffin received a call soliciting Plaintiff to purchase Baltimore Life's insurance products from the telephone number 770-768-6820. The call featured a prerecorded voice. Plaintiff could tell from the electronic sound of the voice and its non-responsiveness that the call was a recording.

18. On or around July 18, 2019, Griffin received another prerecorded call on behalf of Baltimore Life from the telephone number 770-877-3866.

19. On or around July 19, 2019, Griffin received another call from the telephone number 229-860-6013. On this call, Plaintiff spoke with Artreanua Carr, a licensed agent of Baltimore Life, who solicited Plaintiff to purchase Defendant's insurance policies.

20. On information and belief, the July 19th call was made using an automatic telephone dialing system ("ATDS"). While Plaintiff spoke to a live person, there was a noticeable pause between the time Plaintiff answered the call and the operator came on the phone—a telltale sign of an ATDS.

21. The system used to make the call was an ATDS that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant's agents, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an

automatic and systematic manner. The autodialer disseminated information *en masse* to Plaintiff and other consumers.

22. Plaintiff Griffin does not have a current relationship with Defendant and has never provided any form of prior express consent to Defendant.

23. Baltimore Life knew about the calls, directed the making of the calls, ratified the calls by approving them and/or knowingly receiving the benefits from them, and otherwise benefitted from the calls.

24. On information and belief, Defendant knew that its agents, including some of the agents who called Plaintiff Griffin, had received complaints from consumers about unwanted calls, and Defendant was or should have been aware of such complaints. Defendant knowingly received the benefits of these calls, which were made for the specific purpose of potentially selling Defendant's products. The calls were made on Baltimore Life's behalf and for its benefit.

25. By making the telephone calls at issue in this Complaint, Defendant, via its agents, caused Plaintiff Griffin actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the placement and receipt of such unwanted calls, a loss of value realized for monies paid to her wireless carrier for the receipt of such calls, and the interruption and loss of the use and enjoyment of her telephone, including the related data, software, and hardware components, and wear and tear on such components including the consumption of battery life, among other harms.

26. Defendant is and was aware that the above-described telephone calls are and were being made to consumers like Plaintiff Griffin who had not consented to receive them.

## CLASS ALLEGATIONS

27. In accordance with Fed. R. Civ. P. 23(b)(2) and (b)(3) Plaintiff Griffin brings this

action on behalf of herself and two nationwide Classes defined as follows:

> **Autodialed Call Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the class members; (2) Defendant, or a third person acting on behalf of Defendant, called; (3) on the person's cellular telephone; (4) for the same purpose Plaintiff Griffin was called, including for the potential sale of Defendant's products; (5) using the equipment used to call Plaintiff; and (6) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call Plaintiff Griffin.

> **Prerecorded Call Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the class members; (2) Defendant, or a third person acting on behalf of Defendant, called; (3) on the person's telephone; (4) for the same purpose Plaintiff Griffin was called, including for the potential sale of Defendant's products; (5) where the calls featured an artificial and/or prerecorded voice; (5) where the person has no established business relationship with Defendant, and (6) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call Plaintiff Griffin.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the need to amend the class definition following discovery into the scope of the class, the manner by which the Plaintiff supposedly consented to receipt of the calls, the technology and equipment used to place the calls, and the identity of any other persons who should be included as party defendants.

28. **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief,

Defendant's agents placed telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be identified through reference to objective criteria, including Defendant's business records, consumer phone records, and other objective evidence to be gained in discovery.

29.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant, via its agents, systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls;

(c)     Whether the calls were made utilizing an artificial and/or prerecorded voice;

(d)     Whether the calls were made utilizing an ATDS; and

(e)     Whether Defendant acted willfully such that treble damages are warranted.

30.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff is a member of the Classes and, together with the other Class members, suffered essentially the same harm and damages as a result of Defendant's uniform wrongful conduct—namely its agent's repeated making of unlawful telemarketing calls.

31.     **Fair and Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions, including class actions under the TCPA for autodialed and

prerecorded telephone calls and similar cases. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

32. **Conduct Similar Towards All Class Members Under Rule 23(b)(2)**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the class members and making final injunctive relief appropriate with respect to the Classes as two respective wholes. Defendant's practices challenged in this lawsuit apply to and affect the class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

33. **Superiority & Manageability Under Rule 23(b)(3)**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court for each of the Classes. Economies of time, effort, and expense will be fostered and uniformity of

decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227(b),** *et seq.*
**(On behalf of Plaintiff and the Autodialed Call Class)**

34. Plaintiff Griffin incorporates the foregoing allegations as if fully set forth herein.

35. Defendant's agents made unsolicited and unwanted autodialed telemarketing calls to telephone numbers belonging to Plaintiff Griffin and the other members of the Autodialed Call Class—without their prior express written consent—in an effort to sell Baltimore Life's products and services (namely its insurance products).

36. The calls were made on behalf of Defendant and for its benefit. Defendant knowingly received the benefits of these calls.

37. Defendant and its agents failed to obtain any prior express written consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

38. By utilizing agents to place the unsolicited telephone calls to Plaintiff Griffin and members of the Autodialed Call Class's cellular telephones using an ATDS without first obtaining prior express consent, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

39. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed Call Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones, lost data, and other damages, and, under

Section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

40. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff Griffin and the other members of the Autodialed Call Class.

## SECOND CAUSE OF ACTION
### Violation of 47 U.S.C. § 227(b), *et seq.*
### (On behalf of Plaintiff and the Prerecorded Call Class)

41. Plaintiff Griffin incorporates the foregoing allegations as if fully set forth herein.

42. Defendant's agents made unsolicited and unwanted prerecorded telemarketing calls to cellular telephone numbers belonging to Plaintiff Griffin and the other members of the Prerecorded Call Class—without their prior express written consent—in an effort to sell Defendant's products and services (namely its insurance policies).

43. The calls were made on behalf of Defendant and for its benefit. Defendant knowingly received the benefits of these calls.

44. Defendant failed to obtain any prior express written consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

45. By utilizing agents to place the unsolicited calls to Plaintiff Griffin and members of the Prerecorded Call Class's cellular telephones using an artificial and/or prerecorded voice without first obtaining prior express consent, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

10

Case 1:20-cv-00476-ELH   Document 1   Filed 02/24/20   Page 11 of 15

46. As a result of Defendant's unlawful conduct, Plaintiff Griffin and the members of the Prerecorded Call Class suffered actual damages in the form of monies paid to receive the unsolicited prerecorded calls on their telephones, lost data, and other damages, and, under Section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

47. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff Griffin and the other members of the Prerecorded Call Class.

**SECOND CAUSE OF ACTION**
**Violation of Maryland Telephone Consumer Protection Act,**
**Md. Code Ann., Com. Law § 14-3201, *et. seq.***
**(On behalf of Plaintiff and the Prerecorded Call Class)**

48. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

49. The Maryland Telephone Consumer Protection Act states that:

A person may not violate:
(1) The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 through 6108, as implemented by the Federal Trade Commission in the Telemarketing Sales Rule (16 C.F.R. Part 310); or
(2) The Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule

Md. Code Ann., Com. Law § 14-3201

50. As stated in the foregoing allegations, Defendant violates The Telephone Consumer Protection Act, 47 U.S.C. § 227 and therefore violates the Maryland Telephone Consumer Protection Act.

51. Defendant further violates the Maryland Telephone Consumer Protection Act by violating The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101

11

through 6108, as implemented by the Federal Trade Commission in the Telemarketing Sales Rule (16 C.F.R. Part 310).

52. Specifically, 16 C.F.R. Part 310.4 states:

(1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

(v) Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in § 310.4(b)(4)(iii), unless:

(A) In any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

(i) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;
(ii) The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;
(iii) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and
(iv) Includes such person's telephone number and signature; and

(B) In any such call to induce the purchase of any good or service, or to induce a charitable contribution from a member of, or previous donor to, a non-profit charitable organization on whose behalf the call is made, the seller or telemarketer:

(i) Allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and
(ii) Within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by § 310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

(A) In the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request pursuant to § 310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(1) Automatically add the number called to the seller's entity-specific Do Not Call list;
(2) Once invoked, immediately disconnect the call; and
(3) Be available for use at any time during the message; and

> (B) In the case of a call that could be answered by an answering machine or voicemail service, that the person called can use a toll-free telephone number to assert a Do Not Call request pursuant to § 310.4(b)(1)(iii)(A). The number provided must connect directly to an automated interactive voice or keypress-activated opt-out mechanism that:
> (1) Automatically adds the number called to the seller's entity-specific Do Not Call list;
> (2) Immediately thereafter disconnects the call; and
> (3) Is accessible at any time throughout the duration of the telemarketing campaign; and
> (iii) Complies with all other requirements of this part and other applicable federal and state laws.

16 C.F.R. § 310.4.

53. Defendant has violated these provisions as to Plaintiff and the other members of the alleged Class in various ways. First it violated the provisions by initiating a telephone call that delivers a prerecorded message without first securing the required type of written consent. Indeed, Defendant fails to secure any prior express consent, much less the type of written consent required by 16 C.F.R. § 310.4.

54. Second, Defendant's (or its agents') prerecorded messages do not, within two seconds of the completion of the greeting, identify the seller and the purpose of the call. Indeed, on the prerecorded message at issue, the seller is never identified.

55. Moreover, none of the disclosures regarding the right to use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request were provided during the prerecorded message at issue.

56. Thus, under Md. Code Ann., Com. Law § 14-3202, Plaintiff and the Class are entitled to reasonable attorney's fees and damages in the amount of $500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Yvette Griffin, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes, and appointing her counsel as Class Counsel;

B. A declaration that Defendant's agents utilized an automatic telephone dialing system to place calls to Plaintiff and the Classes without prior express consent;

C. A declaration that Defendant's agents placed calls to Plaintiff and the Prerecorded Call Class using an artificial and/or prerecorded voice without prior express consent;

D. An injunction requiring Defendant to cease all unlawful telemarketing activities;

E. An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the other Class Members;

F. Pre- and post-judgment interest as allowed by law;

G. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

H. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: February 24, 2020

**YVETTE GRIFFIN**, individually and on behalf of all others similarly situated,

By: /s/ Martin E. Wolf

Martin E. Wolf (Bar No. 09425)
Gordon, Wolf, & Carney, Chtd.
100 W. Pennsylvania Avenue, Suite 100
Towson, Maryland 21204
mwolf@GWCfirm.com
Tel: 410-825-2300
Fax: 410-825-0066

Patrick H. Peluso*
(ppeluso@woodrowpeluso.com)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Class*

**pro hac vice* admission to be filed*