

# General Agent Contract

This is a General Agent (GA) Contract between the GA referred to below (the "GA", "You" or "Your") and The Baltimore Life Insurance Company (the "Company").

I. **AGREEMENT**
   The GA agrees to represent the Company, subject to the authority delegated herein, and to abide by the terms of this Contract. The Company agrees to compensate the GA according to the terms of this Contract and the compensation schedules, attached hereto and made a part hereof. The GA is an independent contractor, and this Contract does not create an employer/employee relationship between the Company and the GA, or between any of the GA's appointed sub-agents.

II. **AUTHORITY AND RESPONSIBILITY OF THE GA**
   The GA is authorized by the Company to perform the following duties. The GA agrees to perform these duties according to the Company's practices and procedures, which may change from time to time.
   a. Procure and submit to the Company personally and through sub-agents applications for life insurance, health insurance and annuities. Assure that applications are accurately completed and fully disclose to the Company all facts which could affect the Company's decision regarding the issuing of the policy. Ensure that the application is reviewed by the applicant before it is signed by the applicant and that it is signed in your presence or in the presence of sub-agent.
   b. Assure that all sales, marketing and service activities involving the Company or any of the Company's products which are conducted by the GA and all sub-agents appointed by the GA strictly adhere to the Company's Market Conduct Training Manual as well as any other communicated rules of the company and incorporated herein by reference to form a part of this contract.
   c. Those policies provided to you for delivery issued on the applications referenced in sub-paragraph (a) above should be promptly delivered to the policyowner, provided the initial premium has been paid. If, at the time of delivery, the insured is not in the same health and insurable condition as represented in the policy application, the GA or the GA's appointed subagent should not deliver the policy but rather should immediately forward to the Company full details including the nature of the disorder, the date of inception, and the extent of treatment. Policies are not to be delivered unless each person insured by the policy is in the same health and insurable condition as represented in the policy application.
   d. Use best efforts to provide satisfactory service to those policyholders solicited by or assigned to the GA.
   e. Recommend agents and sub-agents for appointment to act as an agent of the Company. All such appointments must be approved at the sole discretion of the Company. The company may terminate the appointment of any agent or sub-agent recommended by GA with our without cause and with or without GA's approval.
   f. Use best efforts to supervise agents and sub-agents and have standards in place so as to reasonably assure that its agents and sub-agents are in conformity with the terms of their contracts including but not limited to the Company's Market Conduct Training Manual.
   g. Be responsible for all money received by the GA, RGA, agents and sub-agents contracted by the GA on behalf of the Company.
   h. Be responsible for any and all indebtedness to the Company of the GA and all agents and sub-agents contracted by the GA. GA agrees to reimburse the Company for all costs and expenses incurred in collecting such debt.
   i. Procure and maintain all necessary licenses required for the GA and all GA's agents and/or sub-agents to solicit applications for or sell or service any of the Company's policies.
   j. Conform to all applicable laws and regulations governing the solicitation, sale and servicing of life insurance, health insurance and annuities.
   k. Be responsible for all property of the Company lent or leased to the GA or GA's sub-agents, and conform to the terms of any loan or lease agreement.
   l. Cooperate at all times with the Company or any of its representatives in any inquiry or investigation as it may relate to the business of the Company, including but not limited to, any within the context of an administrative, regulatory, or judicial proceeding. GA will notify the Company promptly upon receipt of any complaint. In accordance with applicable

Form 8153-0913

laws and regulations you shall maintain accurate and complete books, records, accounts, correspondence or other data relating to all the business of the Company. The Company shall at all times have the right to inspect any and all books, records, accounts, correspondence, or data in your office or kept by you or any agent so far as the same may relate to the business of the Company, and to make such extracts or copies as it may desire.

## III. LIMITS OF THE GA'S AUTHORITY

The GA agrees NOT to perform any acts on behalf of the Company for which the GA is not authorized, including, but not limited to, the following:

a. Incur any debt, expense or liability on behalf of the Company.
b. Modify or waive any of the provisions of the Company's policies, applications, or contracts; or bind the Company in any way.
c. Misquote or incorrectly illustrate any rates or values for any of the Company's products.
d. Use any materials, proposals, illustrations, or advertising identified with the Company or any of the Company' products, which have not been previously submitted to the Company for approval and have not received specific written approval from the Company.
e. Collect any money on behalf of the Company, except for initial premiums on business solicited by the GA.
f. Make any representation or state any opinion regarding the validity or payment of any claim.

## IV. COMPENSATION

As compensation for services, the Company agrees to pay the GA according to the "Schedule of Compensation" attached hereto and made a part hereof as follows:

a. This compensation will be paid only after receipt in the Home Office of premiums. If a premium is refunded for any reason, the GA must return to the Company any compensation and fees paid on that refunded premium. The "Schedule of Compensation" may be modified, altered or changed by the Company in any way upon notice to the GA, and will affect business submitted to the Company after the effective date of the change.
b. Overriding compensation will be paid to the GA on business produced by the GA's agents and or sub-agents. The amount of the overriding compensations paid to the GA is the difference between the compensation in the "Schedule of Compensation" attached to the GA's Contract and the compensation, if any, paid by the Company directly to the GA's agents and sub-agents or owing to the GA's agents and sub-agents but paid through the GA. The GA is responsible for and shall account for and keep records of any compensation earned by its agents or sub-agents which Company pays through the GA.
c. Except as otherwise set forth in this Contract, compensation, which is earned under the terms of this Contract and that is set forth in the "Schedule of Compensation," will be deemed vested, but will be forfeited if the Contract is terminated under the provisions of paragraph V., section d and section e., subsections 1. through 8., or if the GA has not met production requirements at the time of termination as set forth in the "Schedule of Compensation."
d. The Company may elect to accumulate the GA's compensation payments until a payment in excess of $50.00 is due for electronic funds transfer. Amounts not paid by electronic funds transfer will have higher minimums that are established by internal policy. If, in any calendar year, the total compensation due to a GA no longer appointed with the Company is less than $400.00, this contract will terminate, all compensation will stop at the end of that calendar year, and the Company shall have no further liability under this Contract.
e. Any indebtedness of the GA to the Company, whether resulting from acts of the GA, acts of the GA's agents, sub-agents or otherwise, shall be the responsibility of the GA and will be a lien on all compensation payable to the GA. The Company may apply any compensation payable to the GA to offset indebtedness owed to the Company at any time. The Company's right to collect payment of any indebtedness owed by GA shall not be limited solely to offsetting compensation owed the GA by Company. The GA shall remain fully liable for any remaining indebtedness. Any indebtedness which remains outstanding for a period of 60 days after demand by the Company shall bear interest at a rate of 3% above the prime rate listed in the Wall Street Journal. The provisions of this Paragraph shall survive the termination of this Contract.
f. Subject to paragraphs IV. d. and IV. e. above, upon the death of the GA, this Contract will be vested if at the time of the GA's death the production requirements set forth in the Schedule of Compensation have been met.
g. No compensation will be paid when an existing policy issued by the Company on the same life has terminated within six (6) months of the date of the new application being submitted by the GA or the GA's agents or sub-agents. If an existing policy terminates within six (6) months of the date of the new policy on the same life, the GA agrees to refund first year premiums on

GRIFFIN_000002

the original policy not to exceed the first year commission on the second policy.

## V. TERMINATION

This Contract, together with any riders, supplements and endorsements hereto, shall terminate on the occurrence of any of the following:
a. Thirty (30) days following the mailing of written notice by either party to the last known address of such other party.
b. Upon the death of the GA.
c. Upon the termination of the GA's life or health insurance license.
d. Upon a material breach of any of the terms of this Contract as determined by the Company in its sole and absolute discretion.
e. Not withstanding any other provision in this Contract, and whether such events occur prior to or after termination of this Contract, upon the occurrence of any of the events set forth in paragraph V., section e., subsections 8. through 8. The provisions of paragraph V., section e., subsections 1. through 7. shall survive the termination of this Contract.
   1. Upon the commission of any act of fraud, theft or misappropriation of funds, involving the Company, by the GA.
   2. Submission to the Company of information which the GA knows to be false.
   3. Failure to disclose to the Company any medical or personal history of any applicant for any of the Company's policies of which the GA has knowledge.
   4. Inducing any policyholder to terminate any policy with the Company without the prior written approval of the Company.
   5. Upon the GA pleading guilty or nolo contendere or upon being convicted of a crime involving moral turpitude.
   6. Any action on your part that could reasonably be construed to be defamatory, slanderous, libelous, or materially prejudicial to the Company.
   7. Failure to fully pay outstanding debt owed to the Company within 60 days of such date such debt is incurred.
   8. Upon any act that violates market conduct rules as described in the disciplinary actions section of the Market Conduct Training Manual.

Upon termination of this Contract, you shall immediately pay to the Company all sums due and deliver to the Company all brochures, publications, and other materials connected with the sale of Company products. Upon termination for cause, you forfeit all rights to future commissions, and the Company reserves the right to retain, reassign, or cancel any of your general agents, agents or subagents without any further obligation to you.

## VI. GENERAL PROVISIONS

a. The Company may reject applications for policies, limit the amount or plan of insurance, or require a higher premium than applied for, if not prohibited by law.
b. The Company may alter or withdraw existing insurance products, introduce new insurance products, and enter or withdraw from territories, at its sole discretion. The Company shall not be liable to GA or any of GA's agents or sub-agents in connection with such actions.
c. Failure of the Company to promptly enforce non-compliance with the terms of this Contract does not constitute a waiver of such terms. Further, the waiver by the Company of any term or right of enforcement contained in this Contract shall not constitute a waiver of any subsequent breach or right of enforcement.
d. This Contract supersedes any previous Contracts between the GA and the Company. It does not release the GA from financial obligations owed or assumed prior to its effective date.
e. No modification, amendment, or assignment of this Contract will be valid unless approved in writing by a Vice President or President of the Company.
f. The GA shall maintain error and ommissions insurance and provide Company evidence of such coverage upon request.
g. The financial obligations of this Contract shall be binding upon the parties, their heirs, successors and assigns.
h. You agree to hold harmless, defend (with counsel reasonably acceptable to the Company) and indemnify the Company against any claims, judgments, settlements, costs, expenses or other damages, including attorneys fees, which the Company may suffer or incur as the result of any breach of this Contract or any negligent, fraudulent, or unauthorized act, or error or omission, of you, any of your employees, agents, officers, or sub-agents. The Company shall have exclusive authority to direct the defense and effect any settlement in any action for which the foregoing indemnity may apply. You shall upon demand, pay the Company as a debt due hereunder any sums due to it in accordance with this paragraph, as well as any monies expended by the Company in answering or defending any attachment, garnishment, or other proceedings involving you, your employees, or officers, or any agent or other individual under your direct control and supervision. You agree that under no circumstances whatsoever shall the Company be liable to you (or anyone claiming through

Griffin_000003

you) for any lost profits or indirect, incidental, punitive, or consequential damages in connection with this Contract.

i. This Contract is governed by the Laws of the State of Maryland (without regard to any choice of law provisions) and each party hereto agrees to accept service of process in and to submit to the jurisdiction of the federal or state courts located within the State of Maryland for any matter involving this Contract. In any action, suit or proceeding brought by the Company, you agree not to assert that such action, suit or proceeding is brought in an inconvenient forum or that the venue of the action, suit or proceeding is improper.

j. The provisions of this Contract shall be deemed severable. In the event any provision in this Contract is determined to be unenforceable or invalid, such provision shall nonetheless be enforced to the fullest extent permitted by applicable law, and such determination shall not affect the validity and enforceability of any other provisions in this Contract.

k. The Company reserves the right in its sole discretion when settling disputed claims or complaints of a policyholder to refund any premium or premiums paid on a policy or contract produced under this Contract directly by the GA or by an agent or sub-agent of the GA. If such a refund is made, other than as part of the benefits provided by the policy or contract, the GA shall be charged with and/or shall repay to the Company, any compensation paid to GA or GA's agents or sub-agents on the premium or premiums so refunded.

l. You understand and acknowledge that during the term of this Contract you may gain access to certain confidential and proprietary information relating to the Company and its business and you agree to keep all such information confidential.

You agree that any and all "Nonpublic Personal Information" obtained by you on behalf of or from the Company in the performance of your duties and obligations under this Contract shall be used by you only as necessary to fulfill your obligations under this Contract and shall not be disclosed to any other person unless specifically authorized in writing by the Company, or the person who is the subject of the "Nonpublic Personal Information," or as otherwise permitted by law. "Nonpublic Personal Information" has the meaning set forth in section 509 of the Gramm-Leach-Bliley Act (P.L. 106-102) and any federal and state laws and regulations that implement that Act and includes but is not limited to name, address, and financial or health information of a policyholder, insured, applicant, or prospect. You agree to establish physical, electronic, and administrative procedures to protect the security and confidentiality of "Nonpublic Personal Information" in compliance with the Act and any and all federal and state laws and regulations that implement the Act.

m. You agree that the Company will have at all times, both during and after the termination of this Contract, the right to communicate in any fashion with the persons insured under the policies issued hereunder or the owners of such policies for any purpose.

n. Notwithstanding any provision of this Contract to the contrary, the termination of this Contract, whether with or without cause, shall be construed as a termination of: (a) your appointment and your authority under Paragraph I of this Contract; (b) your authority under Paragraph II of this Contract; and (c) the Company's obligations under Paragraph IV of this Contract. All other provisions of this Contract shall survive any termination of this Contract.

_Robert Hudson_  
Signature of General Agent

02/27/2018  
Date

_L Dickst_  
Signature of Appointing Agent/Agency

02/27/2018  
Date

Securus Direct LLC  
Name of Appointing Agent/Agency

_[signature]_  
The Baltimore Life Insurance Company

03/13/2018  
Date

—NOT EFFECTIVE UNTIL SIGNED BY COMPANY—



# Amendment to All Baltimore Life Contracts
Effective March 25, 2015

All Baltimore Life contracts are hereby amended to prohibit the "Use or permit on behalf of the Company an auto-dialer device for any means, or the use or permit on behalf of the Company a predictive dialer device without the prior written approval from the Company." Language specific to your contact is shown below.

**Please print and retain a copy of this amendment with your Baltimore Life contract.**

**INDEPENDENT MARKETING ORGANIZATION CONTRACT**
Section 111. (LIMITS OF THE IMO'S AUTHORITY) of your contract which reads in part : "The IMO agrees NOT to perform any acts on behalf of the Company for which the IMO is not authorized, including, but not limited to, the following:", be amended to add new subsection g. which provides " Use or permit on behalf of the Company an auto-dialer device for any means, or use or permit on behalf of the Company a predictive dialer device without the prior written approval from the Company."

**AGENT CONTRACT**
Section 111. (LIMITS OF THE AGENT'S AUTHORITY) of your contract which reads in part : "The Agent agrees NOT to perform any acts on behalf of the Company for which the Agent is not authorized, including, but not limited to, the following:", be amended to add new subsection g. which provides " Use or permit on behalf of the Company an auto-dialer device for any means, or use or permit on behalf of the Company a predictive dialer device without the prior written approval from the Company."

**SUB-AGENT CONTRACT**
Section 111. (LIMITS OF THE SUB-AGENT'S AUTHORITY) of your contract which reads in part : "The Sub- Agent agrees NOT to perform any acts on behalf of the Company for which the Sub- Agent is not authorized, including, but not limited to, the following:", be amended to add new subsection g. which provides " Use or permit on behalf of the Company an auto-dialer device for any means, or use or permit on behalf of the Company a predictive dialer device without the prior written approval from the Company."

**CAREER AGENCY SALES GROUP EMPLOYMENT AGREEMENT**
Section 111. (LIMITS OF EMPLOYEE'S AUTHORITY) of your contract which reads in part : "The Employee agrees NOT to perform any acts on behalf of the Company for which the Employee is not authorized, including, but not limited to, the following:", be amended to add new subsection L. which provides " Use or permit on behalf of the Company an auto-dialer device for any means, or use or permit on behalf of the Company a predictive dialer device without the prior written approval from the Company."

**GENERAL AGENT CONTRACT**
Section 111. (LIMITS OF THE GA'S AUTHORITY) of your contract which reads in part : "The GA agrees NOT to perform any acts on behalf of the Company for which the GA is not authorized, including, but not limited to, the following:", be amended to add new subsection g. which provides " Use or permit on behalf of the Company an auto-dialer device for any means, or use or permit on behalf of the Company a predictive dialer device without the prior written approval from the Company."

The Baltimore Life Insurance Company
10075 Red Run Boulevard | Owings Mills, MD 21117 | (800) 628-5433

Form 8640-0315

Griffin_000005